IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTELLA AUCTION COMPANY, INC.<br><br>              Plaintiff,<br><br>     vs.<br><br>TRI STATE CONSTRUCTION, INC., MORTON ENGINEERING AND CONSTRUCTIONS, INC., ROBERT L. MORTON, INTERNAL REVENUE SERVICE, EMPLOYMENT DEVELOP-MENTS OF THE STATE OF CALIFORNIA, and TRI STATE CONCRETE CONSTRUCT-ION, INC.,<br><br>              Defendants.<br>                                                                      / | CASE NO. CV F 10-0258 LJO JLT<br><br>**ORDER ON UNITED STATES' MOTION FOR SUMMARY JUDGMENT** (Doc. 31) |

## INTRODUCTION

In this interpleader action, defendant Internal Revenue Service ("IRS"), through the United States of America ("government"), seeks summary judgment in its favor, pursuant to Fed. R. Civ. P. 56. The government argues that based on the preponderance of the evidence, it has priority to the interpled funds on its tax liens that arise from tax assessments assessed against defendants Tri State Construction, Inc. ("Tri State") and Morton Engineering & Construction, Inc. ("Morton Engineering"). In opposition, defendants Robert L. Morton ("Mr. Morton") and Tri State Concrete Construction, Inc. ("Concrete") (collectively "Morton defendants") concede that the government has priority to certain funds, but raise a genuine issue of material fact as to the ownership of other funds. Accordingly, this Court GRANTS in part and DENIES in part the government's summary judgment motion.

## BACKGROUND[1]

Mr. Morton operated several businesses, including Tri State, Concrete, and Morton Engineering,

---

[1] Unless otherwise noted, the government, Concrete, and Mr. Morton stipulated to the following facts, supported by the documentary evidence submitted with the government's motion.

1

which at one time was named R.L. Morton Welding, Inc. ("Welding"), and Morton Recycling, Inc. Mr. Morton was an owner and officer of each of these companies. Mr. Morton and his wife, as trustees of the Morton Living Trust, were the sole shareholders of Concrete. Mr. Morton owned a warehouse that several of his companies purportedly leased, including Tri State and Concrete. No written lease exists.

**Assessments Against Tri State**

In 2002 and 2003, the IRS made a series of tax assessments against Tri State. On December 16, 2002, the IRS made assessments against Tri State for employment taxes (Form 941), penalties, interest, and other statutory additions for the tax period ending, September 30, 2002. On June 2, 2003, the IRS made assessments against Tri State for employment taxes (Form 941), penalties, interest, and other statutory additions for the tax period ending, December 31, 2003. On July 7, 2003, the IRS made assessments against Tri State for employment taxes (Form 941), penalties, interest, and other statutory additions for the tax period ending, March 31, 2003.

A Notice of Federal Tax Lien ("Lien") was recorded against Tri State with the California Secretary of State on January 12, 2004 for the tax periods ending September 30, 2002, December 31, 2002, and March 31, 2003. Tri State has not paid fully these assessments. The balance due on these assessments is $362,523.69.

**Assessments Against Morton Engineering**

On September 16, 2002, the IRS made assessments against Morton Engineering for employment taxes (Form 941), penalties, interest and other statutory additions for the tax period ending June 30, 2002. Notice and demand for payment for these periods was transmitted on September 16, 2002. Morton Engineering has not paid fully these assessments. A Lien was recorded against Morton Engineering on July 12, 2004. The balance of the unpaid assessments is $258,895.58.

**Sale of Tri State to Concrete**

Because of on-going financial problems with Tri State, Mr. Morton decided to close down the company, sell all of its assets, and transfer all of its business to a new company–Concrete. On January 1, 2008, Mr. Morton, as sole director and President of Tri State, sold certain equipment to Concrete for $15,750.00. In addition to that sale, all other assets once held by Tri State were transferred to Concrete.

Despite the company change, Concrete's business did not fare much better than Tri State's. As

a result, Mr. Morton decided to close Concrete.

## The Auction

On or about August 2008, Mr. Morton entered into a Contract to Auction - Auction Services Agreement ("Auction Contract") with plaintiff Martella Auction ("Martella"). Pursuant to the Auction Contract, Martella agreed to sell certain equipment at an unreserved public auction. The Auction Contract identified Tri State under the line marked "Owner/Contact" and adjacent to the line reading "Company."

The items sold ranged from vehicles and machinery to tools and office furniture. The items were listed in Schedule A of the contract, entitled "Tri State Construction, Inc. Schedule A" ('Schedule A"). The Auction Contract and Schedule A were filled out by John Roy Searcy ("Mr. Searcy"), who listed equipment and other items located in the warehouse at Mr. Morton's direction.

The assets were sold at auction on or about September 24, 2008. The net proceeds were $119,110.00. Martella deducted a 12.5% commission, in the amount of $14,888.75, and $1,854.76 for refurbishment and cleaning of the auctioned items. The balance due after all deductions were taken was $101,881.01.

After the auction, Martella performed a lien search on the assets and found liens from the IRS against Tri State. The amount of the liens exceeded the net sale proceeds. Martella informed Mr. Morton of the tax lien. In response, Mr. Morton claimed Tri State did not own many of the items sold at the auction and further claimed that most items were owned either by Mr. Morton personally or Concrete. Mr. Morton asserted that the proceeds of the sale should be distributed to him and not to Tri State. A further lien search performed by Martella revealed liens against Morton Engineering. This interpleader action ensued.

## Interpleader Action

Martella initiated this interpleader action on October 2, 2009 in the Superior Court of California County of Kern, interpleading the net proceeds of the auction sale in the amount of $101,881.01. The government removed the action to this Court on February 16, 2010. Martella deposited the net proceeds of the auction sale with the clerk of this Court on February 4, 2011, and was dismissed from this action on February 7, 2011. The action continues between the defendants.

The government moved for summary judgment on January 31, 2011. The government seeks a determination that the interpled funds shall be distributed to the government to be applied towards Tri State's delinquent tax liabilities. The government argues that it is entitled to all of the proceeds of the auction sale, because Tri State was the beneficial owner of all assets sold. The government's argument relies on the Auction Contract to establish that Tri State was the "owner" of all of the assets sold at auction.

The Morton defendants opposed the motion on February 14, 2011. The Morton defendants concede that the government has a valid claim as to the proceeds of certain asserts sold at auction, but dispute the ownership of the remaining assets sold. As to those items, the Morton defendants argue that the Auction Contract is ambiguous and does not establish conclusively that Tri State owned all of the items listed in Schedule A. In addition, the Morton defendants submit evidence that Mr. Morton owned certain items personally.

By order of this Court, no hearing was set on this motion and no reply was to be filed. Having considered the parties arguments, the evidence presented in support thereof, and the relevant authorities, this Court issues the following order.

### STANDARD OF REVIEW

Fed. R. Civ. P. 56 permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." In a summary judgment motion, a court must decide whether there is a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A party seeking summary judgment/adjudication bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing of sufficient evidence to establish an essential element of the nonmoving party's claim, and on which the non-moving party bears the burden of proof at trial. *Id*. at 322. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "If the party moving for summary judgment

meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor, but "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *T.W. Elec. Serv.*, 809 F.2d at 631. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Fed. R. Civ. P. 56(e) requires a party opposing summary judgment to "set out specific facts showing that there is a genuine issue for trial." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

With these standards in mind, the Court turns to the parties' arguments.

### DISCUSSION

The government contends that it is entitled to the proceeds for all sale of all items at the auction, because according to the Auction Contract between Tri State and Martella, all of the items sold at the auction were owned beneficially by Tri State. In the alternative, the government asserts that in addition to those items traceable directly to Tri State, it has priority to funds derived from property held by Concrete, Morton Engineering, and Welding.

Mr. Morton concedes that the government is entitled to the proceeds for those items that are traceable to Tri State, Concrete, Morton Engineering, and Welding. Mr. Morton claims, however, that the government is not entitled to the rest of the items sold at auction, because they were owned by him personally.

The Court considers the parties' arguments as they relate to the auction items below.

**Undisputed Auction Items**

The government concedes that only $15,150.00 in proceeds can be traced directly to property owned by Tri State through title records and sales contracts. These include Item T-1-2, a Bobcat 863 Turbo Hi Flow, which sold for $9,500.00. Certificate of Title for Item T-1-7 is in the name of Tri State. The sale price of that item was $3,900.00. Certificate of Title for Item T-1-12 is also in the name of Tri State. The sale price of this item was $1,750.00. In opposition, the Morton defendants agree that the government is entitled to the value of the auction's proceeds for these items by virtue of the tax lien against Tri State. Accordingly, summary adjudication is granted in favor of the government for this portion of the proceeds.

The parties further agree that the government is entitled to the proceeds for the items sold that were titled in the name of Concrete. These items include:

| Auction Item Number | Auction Sale Price |
|---|---|
| T-1-1 | $7,000.00 |
| T-1-8 | $1,250.00 |
| T-1-9 | $2,250.00 |
| T-1-11 | $1,750.00 |
| T-1-16 | $1,750.00 |
| **Total** | **$14,000.00** |

Accordingly, the Court grants summary adjudication in favor of the government as to the proceeds for these items sold at auction.

Finally, the parties do not dispute that the government is entitled to the proceeds for the sale of items that are traceable to Morton Engineering, including the following:

| Auction Item Number | Auction Sale Price |
|---|---|
| T-1-10 | $1,750.00 |
| T-1-13 | $1,250.00 |

| | |
|---|---|
| T-1-14 | $5,000.00 |
| T-1-19 | $4,500.00 |
| **Total** | **$12,500.00** |

In addition to these items, the Certificate of Title names Welding as the owner of Item T-1-17. The sale price of this item was $2,000.00. The parties do not dispute that Welding is the predecessor of Morton Engineering. Accordingly, summary adjudication is granted in favor of the government for the proceeds for these items.

**Disputed Auction Items**

The parties dispute the ownership of the rest of the items sold at the auction. There are no certificates of title for the rest of the items listed in Schedule A. The disputed items include a backhoe, Item T-1-3, and accessories to the backhoe, Items T-1-6, T-1-29, T-1-64, T-1-63, and T-1-62. The combined sales price for these items was $27,900. Other disputed auction items include: (1) Item 4-1-15, a forklift (sale price of $5,500); (2) Items T-1-69 through T-1-74, camp stoves (combine sales price of $1,200); and (3) Item T-1-31, a barbecue (sale price of $3,500). Mr. Morton claims that he owned these and other items personally, while the government contends that Tri State was the beneficial owner of all items listed in Schedule A.

The government argues that it is entitled to all of the proceeds from the auction sale. The government contends that the Auction Contract establishes that the Tri State was the beneficial owner of all items listed in Schedule A. To support this argument, the government points out that the Auction Contract identified Tri State in the lines marked "Owner/Contact" and "Company." The government asserts that Mr. Morton, who was the President and a director of Tri State, signed the contract on its behalf. The government argues that pursuant to the common law doctrine of estoppel by contract, codified in Cal. Evid. Code §662,[2] "the facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest[.]" The government's contends that Mr. Morton is bound by the factual recitation of the contract, namely that Tri State is the beneficial

---

[2] Although the government cites and discusses the "California Rules of Evidence," the proper citation is to the California Evidence Code.

7

owner of the items listed in Schedule A. Based on these asserted facts and the doctrine of estoppel by contract, the government contends that pursuant to 26 U.S.C. §§6321 and 6322, the government's tax liens attach to Tri State's interest in the auction property and the proceeds produced from the sale of those items at auction.

The Morton defendants challenge the government's factual statement and legal argument.

As to the law, the Morton defendants correctly argue that the legal authority upon which the government relies is inapplicable. California Evidence Code section 622 reads: "The facts recited in a written instrument are conclusively presumed to be true *as between the parties thereto*, or to their successor in interest." (Emphasis added)*; see also, Knowles v. Tehachapi Valley Hosp. Dist*., 49 Cal. App. 4th 1083, 1092 (1996) (ruling that Cal. Evid. Code 622 is inapplicable since the claim was not "between the parties" to the written document). Because it is undisputed that the government was not a party to the Auction Contract, Cal. Evid. Code §622 is inapplicable. Accordingly, the government cannot rely on this statute to raise a "conclusive presumption" of the truth of the "facts" recited in the Auction Contract.

Moreover, the Morton defendants successfully raise an issue of fact regarding the Auction Contract. The Morton defendants contend that the Auction Contract is ambiguous as to ownership. The Morton defendants point out that although Tri State is listed as "Owner/Contact: Company," Mr. Morton's name is printed, and Mr. Morton signed directly above the line that reads "Title: Owner." The Morton defendants contend that one could interpret the Auction Contract to identify Mr. Morton as the owner based on this information. Moreover, only Mr. Morton's name appears on the signature line of the third page of the contract, under the statement, "I solemnly declare that I am owner, or a duly authorized agent of the Owner, of the Equipment[.]" It is unclear whether Mr. Morton signed as owner personally or as agent of Tri State. The Morton defendants further explain that the Auction Contract was filled out by a Martella employee, Mr. Searcy, and that the ambiguous contract was drafted by Martella.

This Court agrees that the Auction Contact is ambiguous as to ownership. The pertinent portion of the contact appears as follows:

> Owner/Contact:
> Company: Tri State Construction
> Address: 12603 Clay Creek Ct.
> Bakersfield, Ca 93312-5759
> Print Name: Bob Morton
> Signature: X Bob Morton
> Title: Owner
> Telephone: Business: 661-587-4811
> Fax: 661-399-4355
> Federal Identification: _____

The analysis of any contract must begin with the contract's plain language. Cal. Civ. Code § 1639; *Santisas v. Goodin*, 17 Cal.4th 599, 608 (1998); *United States v. Clark*, 218 F.3d 1092, 1096 (9th Cir. 2000) ("Following the traditional rules of contract interpretation, we must examine the plain language of the term in the context of the document as a whole."). The government argues that the plain language of the contract makes clear that Tri State and Martella were the parties to the contract; however, the pertinent portion of the Auction Contract could be interpreted to support both the government's and the Morton defendants' positions. The plain language lists Tri State as "Company" but also lists Mr. Morton in the "Owner" section. Whether Mr. Morton signed as the personal owner or as agent of Tri State is a question of fact to be determined by a fact-finder.

Additionally, the Morton defendants successfully dispute the ownership of several items listed in Schedule A. For example, the Morton defendants point out that the Certificates of Title suggest that some items were owned by Morton Engineering, Concrete, and Welding, notwithstanding the inclusion of these items in Schedule A. As to the disputed items, Mr. Morton declares that Item T-1-15 was an old forklift that was given to him by his father. Mr. Morton claims that the backhoe and its accessories were owned by him personally. To support this claim, Mr. Morton presents a bill of sale for the backhoe that lists Mr. Morton as the owner. Mr. Morton further testified that he built the six camp stoves and

the barbeque that were sold at auction, and that many of the other small tool and equipment were Mr. Morton's personal items. Based on the foregoing, the Morton defendants raise questions of fact as to the ownership of the remaining items auctioned.

The Morton defendants successfully raise questions of fact as to the government's interest in the remaining auction proceeds. As discussed more fully above, the ambiguous Auction Contract does not establish ownership conclusively, and the Morton defendants have presented evidence to dispute ownership of the remaining items. Accordingly, the government's summary adjudication motion as to the remaining proceeds is denied.[3]

## CONCLUSION

For the foregoing reasons, this Court:

1.  GRANTS the government's summary adjudication motion on the following grounds:

    a.  The United States is entitled to $15,150.00 of the auction's proceeds for the items sold that were titled in the name of Tri State, by virtue of the tax lien against Tri State;

    b.  The United States is entitled to $14,000.00 of the auction's proceeds for the items sold that were titled in the name of Concrete by virtue of the tax lien against Tri State and because those items were formerly owned by Tri State; and

    c.  The United States is entitled to $14,500.00 of the auction's proceeds for the items sold that were titled in the name of Morton Engineering, or its predecessor Welding, by virtue of the tax lien against Morton Engineering; and

2.  DENIES the government's summary adjudication motion on all other grounds. IT IS SO ORDERED.

**Dated:   February 15, 2011            /s/ Lawrence J. O'Neill**
                                       UNITED STATES DISTRICT JUDGE

---

[3] The Morton defendants contend that they are entitled to the auction proceeds for the forklift, the backhoe and its accessories, the six camp stoves, and the barbecue as a matter of law, because Mr. Morton owned those and other items personally. The Morton defendants do not move for summary adjudication on those claims, however, and the government was not given an opportunity to respond to the Morton defendants' opposition. Accordingly, to the extent the Morton defendants request an order in their favor in their opposition, that request is denied.

10